UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CASE NO. 3:13-CV-00102-TJC/JRK

| | |
|---|---|
| RONALD GOODIN AND DEBORAH J. GOODIN,<br><br>Plaintiffs<br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | **AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2. This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; and the Florida Consumer Collection Practices Act, §§ 559.55-559.785.

3. Venue is proper in the Middle District of Florida because the acts and transactions occurred here, Plaintiffs reside here, and Defendant transacts business here.

## PARTIES

4. Plaintiff Ronald Goodin is a natural person who resides in the City of Jacksonville, County of Duval, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a person with standing to bring a claim under the Fair Debt Collection Practices Act ("FDCPA") by virtue of being directly affected by a violation of the Act, to wit Plaintiff has been subjected to Defendant's improper loan servicing, which led to him being named as a defendant in a wrongful mortgage foreclosure action, among other improper collection activities.

12. Plaintiffs' Chapter 13 plan provided that the bankruptcy trustee, Douglas W. Neway, Chapter 13 trustee ("Trustee") would pay Plaintiffs' regular monthly loan payment and the amount of Plaintiffs' arrears (based on TBW's claim #4-1) out of Plaintiffs' monthly payments to the Trustee. The Chapter 13 plan was confirmed May 19, 2009.

13. On or about August 24, 2009, TBW filed for bankruptcy pursuant to Chapter 11.

14. On or about August 26, 2009, the servicing of the Plaintiffs' loan was transferred to Bank of America's subsidiary BAC Home Loans Servicing, LP ("BAC").

15. On or about November 20, 2009, during a phone conversation, a BAC representative informed Plaintiffs that BAC had not been receiving mortgage payments for four months and that Plaintiffs' account was being charged late fees of $49.06 for each month.

16. By letter dated November 23, 2009, Plaintiffs notified the Trustee that BAC had not been receiving mortgage payments.

17. The Trustee addressed Plaintiffs concerns via letter stating that payments to the mortgage company are on hold because of the Trustee's need for a transfer of claim to be filed in the Bankruptcy Court by BAC.

18. Plaintiffs have reason to believe that the Trustee also notified BAC of the need for a transfer of claim to be filed in accordance with the Middle District of Florida Bankruptcy Court Rules & Procedures.

19. BAC failed to notify the Bankruptcy Court of its address, and the Trustee was unable to remit mortgage payments through the Chapter 13 plan.

20. Plaintiffs completed their Chapter 13 plan on December 8, 2009.

21. After Plaintiffs completed their Chapter 13 plan, they began making payments directly to BAC.

22. On or about October 8, 2010, Plaintiff received a letter from Bank of America informing Plaintiffs about fees that may be charged to their loan while in default status. At which time, Plaintiffs called Bank of America.

23. Plaintiffs notified Bank of America of the necessity of filing the transfer of claim on multiple occasions, including by appearing at a local Bank of America branch and by letter to Bank of America's CEO. The letter dated November 29, 2010, which is attached as "Exhibit A," details the following:

   a. Plaintiffs went to a Bank of America branch in Jacksonville trying to get discrepancies corrected;

   b. A Bank of America representative told Plaintiffs that Plaintiff's file had been referred to Bank of America's foreclosure department;

   c. A Bank of America representative told Plaintiffs that there were eleven payments past due and legal fees being charged to the account, although these items did not appear on the payment history provided to Plaintiffs;

   d. The Trustee was holding five payments and the first payment of Plaintiffs' arrears to TBW in an "unclaimed funds account" because the subject debt was transferred to Bank of America.

24. On or about December 3, 2010, Plaintiffs received a letter from Bank of America stating that Plaintiffs' home loan payment is past due.

25. In 2011, Plaintiffs were notified that the servicing of Plaintiffs' loan was transferred from BAC to Bank of America.

26. Because Bank of America and/or BAC failed to provide proper notice of its address and right to a claim, the Trustee was unable to remit mortgage payments through the Chapter 13 plan. The funds remain in the court registry pending Bank of America's compliance.

27. Rather than complying with the Trustee's requirements, Bank of America commenced collection activity against the Plaintiffs.

28. Beginning with Plaintiffs' statement dated February 25, 2011, Plaintiffs' monthly statement began to reflect a $1,300 "FORECLOSURE" fee.

29. On or about December 28, 2011, Plaintiffs received a letter from Bank of America stating that Bank of America received $703.31 as payment for Plaintiffs' loan due January 1, 2011, and that the amount was being returned to Plaintiffs because the amount did not represent the full monthly payment of $1,226.55. However, this is erroneous as Plaintiffs have records of payments for this month, and every other month.

30. Beginning around May 9, 2012, Bank of America began returning checks to Plaintiffs because the funds were not sent via certified funds—one of Bank of America's requirements for payment once the loan is referred to Bank of America's foreclosure department.

31. On September 17, 2012, Bank of America filed a mortgage foreclosure action against Plaintiffs in the Fourth Judicial Circuit in and for Duval County, Florida, bearing case number 2012-CA-10285 ("Foreclosure Complaint").

## CAUSES OF ACTION

**COUNT I: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT—15 U.S.C. § 1692 *et seq.***

32. Plaintiffs re-allege Paragraphs 1-31 here.

33. Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) and are persons with standing to bring a claim under the FDCPA by virtue of being directly affected by a

violation of the Act, to wit Plaintiffs have been subjected to Defendant's improper loan servicing, which included misapplication of payments and addition of improper charges and fees, and which led to Plaintiffs being named as a defendant in a wrongful mortgage foreclosure action.

34. The mortgage and note on which Defendant is attempting to collect money is a "debt" within the meaning of section 15 U.S.C. § 1692a(5), as Defendant's lawsuit addresses an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

35. Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), to wit Defendant used the mail in a business the principal purpose of which was to collect debt; regularly attempts to collect debts owed or due to another; attempted to collect a debt that was already in default when it purchased the debt, and because it filed the Foreclosure Complaint against Plaintiffs in which it went beyond enforcing a security interest by praying for a deficiency decree.

36. Defendant is a "debt collector" because the debt was in default when acquired by Plaintiff. See, e.g., Scholosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003) ("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee . . .").

37. Plaintiffs fully complied with their Chapter 13 plan, which included the debt subject to this action, and received a bankruptcy discharge.

38. After completing the Chapter 13 plan and receiving their bankruptcy discharge, Plaintiffs began paying their loan payments direct to BAC.

39. Plaintiffs have made every required payment since filing the Bankruptcy Action, and repeatedly attempted to warn BAC and Bank of America that their loan was being improperly serviced.

40. Despite the foregoing, Defendant continued to improperly service Plaintiffs' loan, and then filed its Foreclosure Complaint on September 17, 2012, alleging that Plaintiffs defaulted on the subject note and mortgage beginning on May 1, 2011, and that Defendant was accruing, and attempting to collect, interest, title search expenses, escrow shortages, advances, late fees, costs, and attorney's fees. All of these costs and fees are un-owed.

41. As such, Defendant intentionally or alternatively through gross negligence, violated the FDCPA by 1) falsely representing the character, amount, or legal status of a debt; 2) falsely representing that nonpayment of a debt will result in sale of property when such action would be unlawful; 3) threatening to take action that cannot legally be taken; and 4) using a false representation or deceptive means to collect or attempt to collect any debt. § 1692e(2)(a), (4), (5), (10).

42. Defendant's actions were either intentional or grossly negligent as, in addition to complying with their loan payment requirements, Plaintiffs did everything in their power to notify BAC and/or Bank of America of the improper servicing of Plaintiffs' loan. Defendant failed to follow any reasonable servicing standards that would prevent it from, for example, filing wrongful foreclosure actions against its borrowers. Instead, despite multiple warnings from Plaintiffs regarding Defendant's need to file a transfer of claim in the Bankruptcy Action, Defendant intentionally disregarded Plaintiffs' attempts to correct the situation, which has caused Plaintiffs a high degree of emotional distress. Plaintiffs, among other things, contacted Defendant by

appearance at a local branch and sent a letter to Bank of America's CEO to correct the situation, which attempts Defendant intentionally disregarded.

43. As a result of Defendant's actions, Plaintiffs suffer from anxiety, sleeplessness, fear of losing their home, loss of appetite, and other such manifestations of emotional distress. Mr. Goodin suffered severe physical manifestations of emotional distress to the extent that he felt he was having a heart attack. Plaintiffs have been scared and shocked at Defendant's ongoing improper loan servicing, and have constantly worried since realizing Defendant was improperly servicing their loan. For example, Plaintiffs have a shed full of boxes they have saved for fear that they would need to pack their belongings and move out of their home at any moment. Plaintiffs have incurred actual damages and Plaintiffs have incurred attorney's fees and costs in pursuing this action.

**Trial by Jury**: Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable. U.S. Const. amend. 7; Fed. R. Civ. P. 38; Fla R. Civ. P. 1.430.

### COUNT II: VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT—§§ 559.55-.785, FLA. STAT ("FCCPA")

44. Plaintiffs re-allege Paragraphs 1-31 here.

45. At all times material, pursuant to section 559.55(2), Florida Statutes, Plaintiffs were "consumers," as Plaintiffs were natural persons allegedly obligated to pay a debt that arises out of a non-existent default, and thus fees and charges that are not owed.

46. At all times material, pursuant to section 559.55(6), Florida Statutes, Defendant was a "debt collector," as it used an instrumentality of commerce for the purpose of collecting a debt, by mailing Plaintiffs notices of past due amounts, and such.

47. Section 559.77(5), Florida Statutes, provides that interpretations of the federal courts relating to the FDCPA shall be given great weight when applying the provision of the FCCPA.

48. Defendant is a "debt collector" because it attempted to collect a debt that was already in default when it purchased the debt, and because it filed the Foreclosure Complaint action against Plaintiffs in which it went beyond enforcing a security interest by praying for a deficiency decree.

49. Defendant is a "debt collector" because the debt was in default when acquired by Plaintiff. See, e.g., Scholosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003) ("[T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee . . .").

50. The mortgage and note on which Defendant has attempted to collect money is a "consumer debt" within the meaning of section 559.55(1), as Defendant's improper loan servicing and addition of improper charges to the balance clamed due prior to the Foreclosure Complaint, and Defendant's lawsuit, addresses an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

51. Section 559.72(9), Florida Statutes, provides that no person shall claim attempt or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

52. Defendant is and was intentionally attempting to collect a debt that it knows is not legitimate because Plaintiffs made every payment to the Trustee since filing bankruptcy, and because Plaintiffs and the Trustee notified Defendant of the need to file a transfer of claim in the

Bankruptcy Action. Defendant misapplied payments and added improper charges and fees to Plaintiffs' account.

53. Defendant's actions were intentional as, in addition to complying with their loan payment requirements, Plaintiffs did everything in their power to notify BAC and/or Bank of America of the improper servicing of Plaintiffs' loan. Defendant failed to follow any reasonable servicing standards that would, for example, prevent it from improperly servicing loans and filing wrongful foreclosure actions against its borrowers. Instead, despite multiple warnings from Plaintiffs regarding Defendant's need to file a transfer of claim in the Bankruptcy Action, Defendant intentionally disregarded Plaintiffs' attempts to correct the situation, which has caused Plaintiffs a high degree of emotional distress. Plaintiffs, among other things, contacted Defendant by appearance at a local branch and sent a letter to Bank of America's CEO to correct the situation, which attempts Defendant intentionally disregarded.

54. As a result of Defendant's actions, Plaintiffs suffer from anxiety, sleeplessness, fear of losing their home, loss of appetite, and other such manifestations of emotional distress. Mr. Goodin suffered severe physical manifestations of emotional distress to the extent that he felt he was having a heart attack. Plaintiffs have been scared and shocked at Defendant's ongoing improper loan servicing, and have constantly worried since realizing Defendant was improperly servicing their loan. For example, Plaintiffs have a shed full of boxes they have saved for fear that they would need to pack their belongings and move out of their home at any moment. Plaintiffs have incurred actual damages and Plaintiffs have incurred attorney's fees and costs in pursuing this action.

**Trial by Jury**: Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable. U.S. Const. amend. 7; Fed. R. Civ. P. 38; Fla R. Civ. P. 1.430.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that:

a) judgment be entered against Defendant for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) for each Plaintiff; an award of actual and punitive damages, and for an award of litigation costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); injunctive and declaratory relief regarding further collection attempts; and all other relief to which Plaintiffs are entitled; and

b) judgment be entered against Defendant for an award of statutory damages of $1,000.00 pursuant to Florida Statutes § 559.77(2) for each Plaintiff and for each violation of the statute; for an award of actual and punitive damages, and for an award of litigation costs and reasonable attorney's fees for each Plaintiff; injunctive and declaratory relief regarding further collection attempts; and any and all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**PARKER & DUFRESNE, P.A.**

\s Austin Brown
Austin Brown, Esquire
Florida Bar Number: 96633
8777 San Jose Blvd., Ste. 301
Jacksonville, Florida 32217
Tel: (904)733-7766; Fax: (904)733-2919
abrown@jaxlawcenter.com

**Trial Counsel for Plaintiff**

## VERIFICATION OF COMPLAINT

Under the penalties of perjury, Plaintiff Ronald Goodin states as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_____
Ronald Goodin

## VERIFICATION OF COMPLAINT

Under the penalties of perjury, Plaintiff Deborah J. Goodin states as follows:

8. I am a Plaintiff in this civil proceeding.
9. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
10. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
11. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
12. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
13. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
14. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_____
Deborah J. Goodin

November 29, 2010

EXHIBIT **A**

Mr. Brian Moynihan, CEO
Bank of America
100 North Tryon Street
Charlotte, North Carolina  28255

RE:   Ronald and Deborah Goodin, BAC Home Loans (Bank of America), Acc't. #22499871-6

Dear Mr. Moynihan:

We went to Bank of America, 1055 Dunn Ave, Jax., Fl trying to get the discrepancies concerning our home mortgage corrected. They told us that they have our file in their Foreclosure Department. They gave us a copy of our acc't. payment history (**only** back to Aug. 2009) showing late charges.(2 pgs attached)   Also, they said there are legal fees being charged to the acc't and that we are eleven (11) payments past due (not shown on history)

We filed chapter 13 bankruptcy on 3-9-09 and was confirmed 5-19-09 (case # 3:09-bk-01061) and our home mtg. payment (with Taylor, Bean and Whitaker (TBW) loan #1451605) was being paid through our bankruptcy.

TBW filed bankruptcy in 8-2009 and BAC Home Loans notified us that they were now our home mtg. co. and we, in turn, notified Douglas Neway, Trustee. We, then, received a letter from the trustee's office stating that BAC Home Loans would have to file the mortgage company change with the bankruptcy court. We called Bank of America and told them to file the change, but, they would **not** file the mortgage company change. The trustee sent a mortgage payment to TBW on 8-18-09 and 11-3-09 (for three months), but, each check was canceled. The trustee could not pay our mtg. payments to you after July, 2009.

We were able to complete (payoff) our bankruptcy plan in 12-2009 and received our discharge 3-11-10 (attached). **We** started paying our mtg. payments to BAC Home Loans on 1-1-10 and are up-to-date on payments.

The trustee is holding the last five (5) mths. of mtg. payments from our bankruptcy (8-2009 thru 12-2009) totaling $6,132.75, in the "unclaimed funds account". We, also, owed **TBW** a mortgage arrearage amount of $8,397.53. The trustee did not make the first payment toward the arrearage until 11-3-09, **after** you took over the mortgage, so, that check was canceled. This amount is, also, being held in the "unclaimed funds account". I have attached our bankruptcy account ledger.

Your help in correcting this matter would be greatly appreciated.

Thank you,


Ronald Goodin
11226 Avery Drive
Jax., FL 32218, (904-751-6172)

Attachments:  five (5) pages

Cc:  Ms. Corrine Brown, Congresswoman

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Brian Moynihan, CEO
100 North Tryon Street
Charlotte, North Carolina
28255

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X M. Jerk
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7010 1870 0003 6868 2102

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

CHARLOTTE NC 28255

| | | |
|---|---|---|
| Postage | $ | $0.61  0219 |
| Certified Fee | | $2.80 |
| Return Receipt Fee (Endorsement Required) | | |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | |

Sent To: Brian Moynihan, CEO, Bank of America
Street, Apt. No.; or PO Box No. 100 North Tryon Street
City, State, ZIP+4 Charlotte, North Carolina 28255

7010 1870 0003 6868 2102

PS Form 3800, August 2006    See Reverse for Instructions