**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**CASE NO. 3:13-CV-00102-TJC/JRK**

| | |
|---|---|
| RONALD GOODIN AND DEBORAH J. GOODIN,<br><br>      Plaintiffs<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>      Defendant. | **THIRD AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>**INJUNCTIVE RELIEF SOUGHT** |

## JURISDICTION

1.  Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

2.  This action arises out of Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; and the Florida Consumer Collection Practices Act, §§ 559.55-559.785.

3.  Venue is proper in the Middle District of Florida because the acts and transactions occurred here, Plaintiffs reside here, and Defendant transacts business here.

## PARTIES

4.  Plaintiff Ronald Goodin is a natural person who resides in the City of Jacksonville, County of Duval, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a person with standing to bring a claim under the Fair Debt Collection Practices Act ("FDCPA") by virtue of being directly affected by a violation of the Act, to wit Plaintiff has been subjected to Defendant's improper loan servicing, which led to him being named as a defendant in a wrongful mortgage foreclosure action, among other improper collection activities.

5.      Plaintiff Deborah J. Goodin is a natural person who resides in the City of Jacksonville, County of Duval, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act, to wit Plaintiff has been subjected to Defendant's improper loan servicing, which led to her being named as a defendant in a wrongful mortgage foreclosure action, among other improper collection activities.

6.      Defendant Bank of America, N.A. ("Bank of America"), is a national banking association, and at all times material, provided financial services to individuals and consumers residing in Florida, including Plaintiffs, and commenced a wrongful mortgage foreclosure action in Duval County, Florida.

<u>**FACTUAL ALLEGATIONS**</u>

7.      On November 13, 2006, Plaintiffs executed and delivered a note and mortgage securing payment of the same to Taylor, Bean & Whitaker Mortgage Corp. ("TBW").  Which mortgage was recorded in Official Records Book 13677, Page 151 of the Public Records of Duval County, Florida.

8.      On or about August 2008, Plaintiffs defaulted on the note and mortgage.

9.      On or about February 18, 2009, Plaintiffs filed a voluntary bankruptcy petition in the Middle District of Florida, Bankruptcy Division ("Bankruptcy Court"), Case No.: 3:09-bk-1061 ("Bankruptcy Action").

10.     Plaintiffs listed TBW as a creditor and TBW received notice of the petition via the Notice of Commencement.

11.     TBW filed its proof of claim on May 15, 2009 (claim #4-1) in the amount of $173,395.36.

12.     Plaintiffs' Chapter 13 plan provided that the bankruptcy trustee, Douglas W. Neway, Chapter 13 trustee ("Trustee") would pay Plaintiffs' regular monthly loan payment and the amount of Plaintiffs' arrears (based on TBW's claim #4-1) out of Plaintiffs' monthly payments to the Trustee.  A copy of Plaintiffs' Chapter 13 Plan is attached as "Exhibit B."

13.     Paragraph 1 of Plaintiffs' Chapter 13 Plan states, "the debtors shall pay to the trustee the sum of $1,827.00 per month for months 1 through 12 and &1, 898.00 per month for months 13 through 60."

14.     Section B.(1) of Plaintiffs' Chapter 13 Plan states, "The debtor is currently in arrears on the mortgage in the amount of approximately $6,322.75 which the trustee shall pay at the rate of $105.55 per month over the life of the plan."

15.     The Chapter 13 plan was confirmed May 19, 2009.

16.     Thus, Plaintiffs were in arrears/default on their mortgage, and were not due to be contractually current on their mortgage until approximately April 2014.

17.     On or about August 24, 2009, TBW filed for bankruptcy pursuant to Chapter 11.

18.     On or about August 26, 2009, the servicing of the Plaintiffs' loan was transferred to Bank of America's subsidiary BAC Home Loans Servicing, LP ("BAC").

19.     On or about November 20, 2009, during a phone conversation, a BAC representative informed Plaintiffs that BAC had not been receiving mortgage payments for four months and that Plaintiffs' account was being charged late fees of $49.06 for each month.

20.     By letter dated November 23, 2009, Plaintiffs notified the Trustee that BAC had not been receiving mortgage payments.

21.     The Trustee addressed Plaintiffs concerns via letter stating that payments to the mortgage company are on hold because of the Trustee's need for BAC to file a transfer of claim with the Bankruptcy Court.

22.     Plaintiffs have reason to believe that the Trustee also notified BAC of the need for a transfer of claim to be filed in accordance with the Middle District of Florida Bankruptcy Court Rules & Procedures.

23.     Additionally, Plaintiffs' sent, and Defendant received on December 17, 2009, the letter from the Trustee that stated the need for Defendant to file a transfer of claim, along with the letter that Plaintiffs initially provide to the Trustee, explaining the problem.

24.     BAC failed to notify the Bankruptcy Court of its address, and the Trustee was unable to remit mortgage payments through the Chapter 13 plan.

25.     Plaintiffs completed their Chapter 13 plan on December 8, 2009.

26.     Therefore, Plaintiffs were in arrears/default on their mortgage until December 8, 2009.

27.     After Plaintiffs completed their Chapter 13 plan, they began making payments directly to BAC.

28.     On or about October 8, 2010, Plaintiff received a letter from Bank of America informing Plaintiffs about fees that may be charged to their loan while in default status.  At which time, Plaintiffs called Bank of America because Plaintiffs were supposed to be contractually current on their loan as of December 8, 2009.

29.     Plaintiffs notified Bank of America of the necessity of filing the transfer of claim on multiple occasions, including by appearing at a local Bank of America branch and by letter to

Bank of America's CEO.  The letter dated November 29, 2010, which is attached as "Exhibit A," details the following:

    a.  Plaintiffs went to a Bank of America branch in Jacksonville trying to get discrepancies corrected;

    b.  A Bank of America representative told Plaintiffs that Plaintiff's file had been referred to Bank of America's foreclosure department;

    c.  A Bank of America representative told Plaintiffs that there were eleven payments past due and legal fees being charged to the account, although these items did not appear on the payment history provided to Plaintiffs;

    d.  The Trustee was holding five payments and the first payment of Plaintiffs' arrears to TBW in an "unclaimed funds account" because the subject debt was transferred to Bank of America.

30.    On or about December 3, 2010, Plaintiffs received a letter from Bank of America stating that Plaintiffs' home loan payment is past due.

31.    In 2011, Plaintiffs were notified that the servicing of Plaintiffs' loan was transferred from BAC to Bank of America.

32.    Because Bank of America and/or BAC failed to provide proper notice of its address and right to a claim, the Trustee was unable to remit mortgage payments through the Chapter 13 Plan.  The funds remain in the court registry pending Bank of America's compliance.  A copy of the "U.S. Bankruptcy Court Middle District of Florida Funds Unclaimed Directory" showing an amount of $14,530.28 of unclaimed funds is attached as "Exhibit C."

33.    Rather than complying with the Trustee's requirements, Bank of America commenced collection activity against the Plaintiffs.

34.     Beginning with Plaintiffs' statement dated February 25, 2011, Plaintiffs' monthly statement began to reflect a $1,300 "FORECLOSURE" fee.

35.     On or about December 27, 2011, Bank of America sent Plaintiffs a "NOTICE OF INTENT TO ACCELERATE," falsely stating that Plaintiffs must pay $15,903.07 or Bank of America would accelerate the debt and foreclose.  Not surprisingly, this amount Bank of America claimed due is almost exactly the amount that Bank of America refuses to take out of the unclaimed funds registry plus wrongful late charges and fees.

36.     On or about December 28, 2011, Plaintiffs received a letter from Bank of America stating that Bank of America received $703.31 as payment for Plaintiffs' loan due January 1, 2011, and that the amount was being returned to Plaintiffs because the amount did not represent the full monthly payment of $1,226.55.  However, this is erroneous as Plaintiffs have records of payments for this month, and every other month.

37.     On February 10, 2012, the undersigned firm, on behalf of Plaintiffs mailed Bank of America a letter (attached as "Exhibit D"),

      e.   Explaining that Plaintiffs receive the notice of acceleration;

      f.   Explaining that the amount of $15,903.07 is incorrect;

      g.   Explaining that Plaintiffs were current on their payments;

      h.   Explaining that the default Bank of America was blaming on Plaintiffs was actually due to Bank of America failing to file a transfer of claim;

      i.   Demanding that Bank of America "obtain the funds from the Clerk of Court and take the steps necessary to ensure that the Goodins' account is reflected as current. In the event you fail to comply with these demands immediately or provide legitimate reasons, in writing, for your failure to do so, Mr. and Mrs.

Goodin have authorized this firm to seek relief in court in the form of a Motion

for Contempt, Motion to Enforce, and a lawsuit for violation of the FDCPA and

FCCA [sic]."

38.     Beginning around May 9, 2012, Bank of America began returning checks to

Plaintiffs because the funds were not sent via certified funds—one of Bank of America's

requirements for payment once the loan is referred to Bank of America's foreclosure department,

which was wrongly in place because Bank of America is to blame for the loan being in the

foreclosure department.

39.     On September 17, 2012, Bank of America filed a mortgage foreclosure action

against Plaintiffs in the Fourth Judicial Circuit in and for Duval County, Florida, bearing case

number 2012-CA-10285, in which Bank of America also sought a deficiency decree ("Foreclosure

Complaint").

40.     Bank of America's voluntarily dismissed its foreclosure action on March 22, 2013.

## CAUSES OF ACTION

**COUNT I:  VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT—15
U.S.C. § 1692 *et seq.***

41.     Plaintiffs re-allege Paragraphs 1-40 here.

42.     Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1692a(3) and are

persons with standing to bring a claim under the FDCPA by virtue of being directly affected by a

violation of the Act, to wit Plaintiffs have been subjected to Defendant's improper debt collection,

which included misapplication of payments and addition of improper charges and fees, and which led

to Plaintiffs being named as a defendant in a wrongful mortgage foreclosure action.

43.     The mortgage and note on which Defendant is attempting to collect money is a

"debt" within the meaning of section 15 U.S.C. § 1692a(5), as Defendant's collection attempts

address an obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

44.    Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), to wit Defendant attempted to collect a debt that was in default when it was assigned servicing rights of the debt, and because it filed the Foreclosure Complaint against Plaintiffs in which it went beyond enforcing a security interest by praying for a deficiency decree (meaning Defendant was doing more than enforcing a security interest).  More specifically, as alleged above, Plaintiffs' Chapter 13 Plan was confirmed on May 19, 2009, and was to take 60 months to complete (thus into April 2014). As per the Chapter 13 Plan, Plaintiffs were in default/arrears on their mortgage of approximately $6,322.75, which the Trustee was to pay at a rate of $105.55 per month over the life of the plan (into April 2014).  However, Plaintiffs completed their Chapter 13 Plan early on December 8, 2009, thereby bringing their mortgage loan current on that date.  This is all while servicing of the Plaintiffs' loan was transferred to Defendant on August 26, 2009.  Therefore, the servicing of Plaintiffs' loan was transferred to Defendant while the loan was in default.[1]

---

[1] It is well established that a defendant is a "debt collector" if it services a loan that it acquired while the loan was in default.  North Star Capital Acquisitions, LLC v. Krig, 611 F. Supp. 2d 1324, 1335 (M.D. Fla. 2009) ("'Thus, a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned.'") (quoting Belin v. Litton Loan Servicing, LP, No. 8:06-cv-760-T-24EAJ, 2006 WL 1992410, *2 (M.D. Fla. Jul. 14, 2006)); accord Scholosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985); Bently v. Bank of America, N.A., 733 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011) ("However, '[u]nder the FDCPA, consumer's creditors, a mortgage servicing company, or an assignee of a debt are not considered "debt collectors," as long as the debt was not in default at the time is was assigned.'") (quoting Reese v. JPMorgan Chase & Co., 686 F. Supp. 2d 1291, 1308 (S.D. Fla. 2009)).

45.     Beginning August 26, 2009, Defendant began improperly default servicing Plaintiffs' loan, and have continued to do so for a period of four years.

46.     Plaintiffs had no choice as to whether Defendant would default service their loan because their loan was transferred from TBW to Defendant.

47.     Plaintiffs, despite no duty to do so, began warning Defendant of Defendant's violations since at least December of 2009—for almost four years.  Plaintiffs did so because of how important it was to Plaintiffs that their loan be serviced properly and they not be kicked out of their home.

48.     Plaintiffs fully complied with their Chapter 13 Plan, which included the debt subject to this action, and received a bankruptcy discharge on December 8, 2009—thereby bringing their loan contractually current.

49.     After completing the Chapter 13 Plan and receiving their bankruptcy discharge, Plaintiffs began paying their loan payments directly to BAC.

50.     However, Defendant began returning Plaintiffs' payments because Defendant's default loan servicing records showed that Plaintiffs were in default.

51.     Despite the foregoing, Defendant continued to improper default servicing of Plaintiffs' loan, and then filed its Foreclosure Complaint on September 17, 2012, alleging that Plaintiffs defaulted on the subject note and mortgage beginning on May 1, 2011, and that Defendant was accruing, and attempting to collect, interest, title search expenses, escrow shortages, advances, late fees, costs, and attorney's fees.  All of these costs and fees are un-owed.

52.     As such, Defendant intentionally and with malicious intent, violated the FDCPA by 1) falsely representing the character, amount, or legal status of a debt; 2) falsely representing that nonpayment of a debt will result in sale of property when such action would be unlawful; 3)

threatening to take action that cannot legally be taken; and 4) using a false representation or deceptive means to collect or attempt to collect any debt.  § 1692e(2)(a), (4), (5), (10).

53.     Defendant's actions were either intentional or grossly negligent as, in addition to complying with their loan payment requirements, Plaintiffs did everything in their power to notify BAC and/or Bank of America of the improper servicing of Plaintiffs' loan.  Defendant failed to follow any reasonable default servicing standards that would prevent it from, for example, filing wrongful foreclosure actions against its borrowers.  Instead, despite multiple warnings from Plaintiffs regarding Defendant's need to file a transfer of claim in the Bankruptcy Action, Defendant intentionally disregarded Plaintiffs' attempts to correct the situation, which has caused Plaintiffs a high degree of emotional distress.  Plaintiffs, among other things, contacted Defendant by appearance at a local branch and sent a letter to Bank of America's CEO to correct the situation, which attempts Defendant intentionally disregarded.

54.     As a result of Defendant's actions, Plaintiffs suffer from anxiety, sleeplessness, fear of losing their home, loss of appetite, and other such manifestations of emotional distress.  Mr. Goodin suffered severe physical manifestations of emotional distress to the extent that he felt he was having a heart attack.  Plaintiffs have been scared and shocked at Defendant's ongoing improper loan servicing, and have constantly worried since realizing Defendant was improperly servicing their loan.  For example, Plaintiffs have a shed full of boxes they have saved for fear that they would need to pack their belongings and move out of their home at any moment.  Plaintiffs have incurred actual damages and Plaintiffs have incurred attorney's fees and costs in pursuing this action.  This has been the case for over four years.

**Trial by Jury**:  Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable.  U.S. Const. amend. 7; Fed. R. Civ. P. 38; Fla R. Civ. P. 1.430.

## COUNT II:  VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT—§§ 559.55-.785, FLA. STAT ("FCCPA")

55.     Plaintiffs re-allege Paragraphs 1-40, and 44 here.

56.     At all times material, pursuant to section 559.55(2), Florida Statutes, Plaintiffs were "consumers," as Plaintiffs were natural persons allegedly obligated to pay a debt that arises out of a non-existent default, and thus fees and charges that are not owed.

57.     At all times material, pursuant to section 559.55(6), Florida Statutes, Defendant was a "debt collector," as it used an instrumentality of commerce for the purpose of collecting a debt, by mailing Plaintiffs notices of past due amounts, and such.

58.     Section 559.77(5), Florida Statutes, provides that interpretations of the federal courts relating to the FDCPA shall be given great weight when applying the provision of the FCCPA.  While it is unnecessary for Defendant to be deemed a "debt collector" under the FCCPA for the purposes of Plaintiffs' Complaint, out of an abundance of caution, Plaintiffs re-allege and incorporate Paragraph 44 here.

59.     The mortgage and note on which Defendant has attempted to collect money is a "consumer debt" within the meaning of section 559.55(1), as Defendant's improper debt collection and addition of improper charges to the balance clamed due prior to the Foreclosure Complaint, and Defendant's lawsuit, addressed an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which were the subject of the transaction were primarily for personal, family, or household purposes.

60.     Section 559.72(9), Florida Statutes, provides that no person shall claim attempt or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows the right does not exist.

61.     Beginning August 26, 2009, Defendant began improperly default servicing Plaintiffs' loan, and have continued to do so for a period of four years.

62.     Plaintiffs had no choice as to whether Defendant would service their loan because their loan was transferred from TBW to Defendant.

63.     Plaintiffs, despite no duty to do so, began warning Defendant of Defendant's violations since at least December of 2009—for almost four years.  Plaintiffs did so because of how important it was to Plaintiffs that their loan be serviced properly and they not be kicked out of their home.

64.     Plaintiffs fully complied with their Chapter 13 Plan, which included the debt subject to this action, and received a bankruptcy discharge on December 8, 2009—thereby bringing their loan contractually current.

65.     After completing the Chapter 13 plan and receiving their bankruptcy discharge, Plaintiffs began paying their loan payments directly to BAC.

66.     However, Defendant began returning Plaintiffs' payments because Defendant's default loan servicing records showed that Plaintiffs were in default.

67.     Despite the foregoing, Defendant continued to improperly default service Plaintiffs' loan, and then filed its Foreclosure Complaint on September 17, 2012, alleging that Plaintiffs defaulted on the subject note and mortgage beginning on May 1, 2011, and that Defendant was accruing, and attempting to collect, interest, title search expenses, escrow shortages, advances, late fees, costs, and attorney's fees.  All of these costs and fees are un-owed.

68.     Defendant knowingly and intentionally attempted and threatened to enforce a debt that Defendant knew was not legitimate and asserted the existence of a legal right when Defendant knew the right did not exist, as the default Defendant blames on Plaintiffs is from Defendant's

failure to file a transfer of claim, of which Plaintiffs put Defendant on notice for years.  Thus, Defendant's actions were willfully done because the actions proceeded from a conscious motion of Defendant's will, intending the result which actually came to pass.

69.     Defendant's actions were done with malicious intent,[2] as Defendant's actions are wholly without cause or excuse, to wit 1) Plaintiffs did not choose Defendant to service their loan; 2) Plaintiffs have suffered improper collection attempts for years that stem from Defendant's failure to properly file a transfer of claim, which it was required to do because Defendant decided to take over default servicing of Plaintiff's loan; 3) despite Defendant knowing for years, by way of numerous communications from Plaintiffs to Defendant, that Plaintiffs were not in default, but rather Defendant was in default.  There is no cause or excuse for Defendant to violate the law for years, while being on notice for years, as a result of its own failures, and despite Plaintiffs going to every length to correct the problem.  This problem would not have occurred but for Defendant's taking over of default servicing of this loan, and Defendant's subsequent willful, knowing, and conscious disregard for the law.  Defendant decided to impose its wrongful will on Plaintiffs without the slightest care for correcting the problem.

70.     As a result of Defendant's actions, Plaintiffs suffer from anxiety, sleeplessness, fear of losing their home, loss of appetite, and other such manifestations of emotional distress.  Mr. Goodin suffered severe physical manifestations of emotional distress to the extent that he felt he was having a heart attack.  Plaintiffs have been scared and shocked at Defendant's ongoing improper loan servicing, and have constantly worried since realizing Defendant was improperly servicing their loan.  For example, Plaintiffs have a shed full of boxes they have saved for fear that

---

[2] "Malice . . . imports a wrongful act done to inflict injury or without a reasonable cause or excuse."  Crespo v. Brachfeld Law Group, No. 11-60569-CIV, at *6 (S.D. Fla. Sept. 28, 2011) (quoting Tallahassee Title Co. v. Dean, 411 So. 2d 204, 205-06 (Fla. 1st DCA 1982)).

they would need to pack their belongings and move out of their home at any moment.  Plaintiffs have incurred actual damages and Plaintiffs have incurred attorney's fees and costs in pursuing this action.  This has been the case for over four years.

**Trial by Jury**:  Plaintiffs are entitled to and hereby respectfully demand a trial by jury on all issues so triable.  U.S. Const. amend. 7; Fed. R. Civ. P. 38; Fla R. Civ. P. 1.430.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that:

a) judgment be entered against Defendant for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) for each Plaintiff; an award of actual and punitive damages, and for an award of litigation costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); injunctive and declaratory relief regarding further collection attempts; and all other relief to which Plaintiffs are entitled; and

b) judgment be entered against Defendant for an award of statutory damages of $1,000.00 pursuant to Florida Statutes § 559.77(2) for each Plaintiff and for each violation of the statute; for an award of actual and punitive damages, and for an award of litigation costs and reasonable attorney's fees for each Plaintiff; injunctive and declaratory relief regarding further collection attempts; and any and all other relief to which Plaintiffs are entitled.

Respectfully submitted,

**PARKER & DUFRESNE, P.A.**

_____\s Austin Brown_____
Austin Brown, Esquire
Florida Bar Number: 96633
8777 San Jose Blvd., Ste. 301
Jacksonville, Florida 32217
Tel: (904)733-7766; Fax: (904)733-2919
abrown@jaxlawcenter.com

**Trial Counsel for Plaintiff**



November 29, 2010                           EXHIBIT __A____

Mr. Brian Moynihan, CEO
Bank of America
100 North Tryon Street,
Charlotte, North Carolina  28255

RE:    Ronald and Deborah Goodin, BAC Home Loans (Bank of America) , Acc't. #22499871-6

Dear Mr. Moynihan:

We went to Bank of America, 1055 Dunn Ave, Jax., Fl  trying to get the discrepancies concerning our home
mortgage corrected.  They told us that they have our file in their Foreclosure Department.  They gave us a copy of
our acc't. payment history (**only** back to Aug. 2009) showing late charges.(2 pgs attached)    Also, they said there
are legal fees being charged to the acc't and that we are eleven (11) payments past due (not shown on history)

We filed chapter 13 bankruptcy on 3-9-09 and was confirmed 5-19-09 (case # 3:09-bk-01061) and our home mtg.
payment (with Taylor, Bean and Whitaker (TBW) loan #1451605) was being paid through our bankruptcy.

TBW filed bankruptcy in 8-2009 and  BAC Home Loans notified us that they were now our home mtg. co. and we,
in turn, notified Douglas Neway, Trustee.  We, then, received a letter from the trustee's office stating that BAC
Home Loans would have to file the mortgage company change with the bankruptcy court.  We called Bank of
America and told them to file the change, but, they would **not** file the mortgage company change.  The trustee sent
a mortgage payment to TBW on 8-18-09 and 11-3-09 (for three months), but, each check was canceled.  The
trustee could not pay our mtg. payments to you after July, 2009.

We were able to complete (payoff) our bankruptcy plan in 12-2009 and received our discharge 3-11-10 (attached).
**We** started paying our mtg. payments to BAC Home Loans on 1-1-10 and are up-to-date on  payments.

The trustee is holding the last five (5) mths. of mtg. payments from our bankruptcy (8-2009 thru 12-2009) totaling
$6,132.75, in the "unclaimed funds account".  We, also, owed **TBW** a mortgage arrearage amount of $8,397.53 .
The trustee did not make the first payment toward the arrearage until 11-3-09, **after** you took over the mortgage,
so, that check was canceled.  This amount is, also, being held in the "unclaimed funds account".  I have attached our
bankruptcy account ledger.

Your help in correcting this matter would be greatly appreciated.

Thank you,


Ronald Goodin
11226 Avery Drive
Jax., FL 32218, (904-751-6172)

Attachments:  five (5) pages

Cc:  Ms. Corrine Brown, Congresswoman

JACKSONVILLE FL 322

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ☒ Complete items 1, 2, and 3. Also complete item 4 If Restricted Delivery is desired.<br>☒ Print your name and address on the reverse so that we can return the card to you.<br>☒ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X *M Jeth*   ☐ Agent  ☐ Addressee<br>B. Received by ( *Printed Name* )   C. Date of Delivery |
| 1. Article Addressed to:<br><br>*Brian Moynihan, CEO*<br>*100 North Tryon Street*<br>*Charlotte, North Carolina*<br>*28255* | D. Is delivery address different from item 1?  ☐ Yes<br>If YES, enter delivery address below:  ☐ No<br><br>3. Service Type<br>☐ Certified Mail  ☐ Express Mail<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ C.O.D.<br>4. Restricted Delivery? ( *Extra Fee* )  ☐ Yes |
| 2. Article Number<br>*(Transfer from service lab*  7010 1870 0003 6868 2102 | |
| PS Form 3811, February 2004 | Domestic Return Receipt | 102595-02-M-1540 |

**U.S. Postal Service**
**CERTIFIED MAIL  RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

7010 1870 0003 6868 2102

| CHARLOTTE NC 28255 | | |
|---|---|---|
| Postage | $ | $0.61 | 0218 |
| Certified Fee | $2.80 | |
| Return Receipt Fee<br>(Endorsement Required) | $2.30 | Postmark<br>Here |
| Restricted Delivery Fee<br>(Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ | |

Sent To *Brian Moynihan, CEO, Bank of America*
Street, Apt. No.; *100 North Tryon Street*
or PO Box No.
City, State, ZIP+4 *Charlotte, North Carolina 28255*

PS Form 3800, August 2006        See Reverse for Instructions

NORTH CAX STATE
DEC 8 2010

 EXHIBIT B

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN RE:

CASE NO: 3-09-BK-001061-PMG

RONALD W. GOODIN and
DEBORAH PEREZ GOODIN

Debtors.

CHAPTER 13 PLAN

The debtors hereby submit the following Plan:

1. The future earnings of the debtors are submitted to the supervision and control of the Bankruptcy Court, and the debtors shall pay to the trustee the sum of **$1,827.00** per month for months 1 through 12 and **$1,898.00** per month for months 13 through 60.

2. From the payments submitted by the debtors, the trustee shall make distribution as follows:

A. Priority Claims.

(1) The fees and expenses of the trustee shall be paid over the life of the Plan as set by the United States Trustee.

(2) Debtors owe attorney fees to PINKSTON AND PINKSTON, P.A. in the amount of $1,974.00 which the trustee shall pay at the rate of $164.50 per month for months 1 through 12.

B. Secured Claims.

(1) TAYLOR BEAN AND WHITAKER holds a first mortgage on debtor's residence. The trustee shall make the regular monthly payment of **$1,226.55** (or such other monthly amount as may be required because of interest rate adjustments or escrow requirement changes) over the life of the Plan. The debtor is currently in arrears on the mortgage in the amount of approximately $6,332.75 which the trustee shall pay at the rate of **$105.55** per month over the life of the plan. Arrearage includes one post-petition payment (March 2009).

(2) GMAC MORTGAGE holds a first mortgage on debtor's property located at 9070 4th Avenue, Jacksonville, Florida. Debtor intends to surrender the subject security in full satisfaction of the debt.

(3) GMAC MORTGAGE holds a second mortgage on debtor's property located at 9070 4th Avenue, Jacksonville, Florida. Debtor intends to surrender the subject security in full satisfaction of the debt.

(4) SHEFFIELD FINANCIAL CO. holds a lien on debtor's concession trailer. Debtors intend to surrender their interest in this collateral in full satisfaction of this debt.

(5) CHRYSLER FINANCIAL holds a lien on debtor's 2004 Dodge Intrepid in the amount of $7,234.00 which the trustee shall pay at the rate of $146.68 (at 8%) per month over the life of the plan to pay this creditor in full satisfaction of this debt. If this creditor received adequate protection payments by Court order at any amount in excess of $146.68 provided in this Plan, then the unsecured creditors and

perhaps secured creditors may not receive scheduled distribution payments from the trustee after confirmation of debtor's Chapter 13 Plan for several months due to the amount paid to this creditor during the interim period prior to confirmation.

(6)     **INDEPENDENT BANK** holds a lien on debtor's 2006 Dodge Ram. Debtors intend to surrender their interest in this collateral in full satisfaction of this debt.

C.     <u>Unsecured Claims</u>.     The trustee shall distribute all remaining sums pro rata among those unsecured creditors whose claims are timely filed and allowed, including secured creditors who have deficiency claims or whose liens have been avoided. The unsecured creditors in this case will receive **$11,000.00** which the Trustee shall pay at the rate of **$0.00** for months 1 through 12 and **$229.17** per month for months 13 through 60.

3.     Any creditor's claim (other than governmental units) filed after the claims bar date will receive no distribution under this plan unless specifically provided for above or unless debtor files the same on behalf of a creditor. Governmental units shall have one hundred and eighty days from 2/18/2009 within which to file a claim with the court.

4.     All creditors shall retain their liens to the extent permitted by 11 U.S.C. Section 506(d).

5.     To satisfy the requirements of Section 365 of the Bankruptcy Code, debtors hereby expressly assume all of their leases and executory contracts in which they are parties and no lease nor executory contract entered into by debtors is being rejected.

6.     Title to debtors' property shall revest in the debtors upon confirmation of this Plan.

7.     *Except as provided for in the plan, the order confirming the plan or other court order, no interest, late charges, penalties or attorney's fees will be paid to or accessible by any secured creditor. 11 U.S.C. Section 1327(a) provides:*

"*The provisions of a confirmed plan bind the debtors and each creditor, whether or not the claim of such creditor provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.*"

*Once debtors successfully complete the Chapter 13 plan and a discharge is entered by the Court, NO SECURED CREDITOR WILL BE ALLOWED TO ADD LATE CHARGES, PENALTIES, INTEREST OR ATTORNEY'S FEES FROM THE BEGINNING OF TIME THROUGH THE DATE OF DISCHARGE.*

DATED this 5th day of March, 2009.

PINKSTON & PINKSTON, P.A.

David J. Pinkston
Florida Bar Number 0985619
Post Office Box 4608
Jacksonville, Florida 32201
904/389-5880; Fax 904/389-9957
Attorney for Debtors



**EXHIBIT** _____C_____

Generated: 08/11/2013 15:32:41

## U.S. Bankruptcy Court
## Middle District of Florida
## Funds Unclaimed Directory

Search key: goodin
Sorted by: Debtor

| Case Number | Debtor | Creditor | Amount |
|---|---|---|---|
| 3:09-bk-01061-PMG | GOODIN, RONALD W | **TAYLOR BEAN & WHITAKER MTG** 1417 N MAGNOLIA OCALA, FL 34475- | **$14,530.28** |
| 8:98-bk-21098-ALP | GOODINE, JOHN & SALLY | **MONTGOMERY WARD** GE CAPITAL BOX 103104 ROSWELL, GA | **$44.30** |

www.flmb.uscourts.gov
New Search

EXHIBIT  A D

## PARKER & DuFRESNE

*Attorneys at Law*

*Established 1994*

Donald M. DuFresne
E. Warren "Chip" Parker, Jr.
Patricia L. Parker
Felecia L. Falana
Amanda M. Thoele

8777 San Jose Boulevard
Churchill Park, Suite 301
Jacksonville, Florida 32217
Telephone (904) 733-7766
Facsimile (904) 733-2919

Business Bankruptcy
Consumer Bankruptcy
Foreclosure Defense
Consumer Litigation

*www.pdlawcenter.com*

February 10, 2012

Bank of America, N.A.
7105 Corporate Drive
Plano, Texas 75024

Re:     Ronald and Deborah Goodin
        Account No.:
        Your Case No.: 0914133286703
        Bankruptcy Case No.: 3:09-bk-01061-PMG
        Property Address:

To Whom It May Concern:

Please be advised that this firm has been retained by Ronald and Deborah Goodin with regard to the above-referenced loan.  Please direct all future correspondence to this office at the address above.

On or about December 27, 2011, Mr. and Mrs. Goodin received a "Notice of Intent to Accelerate" letter demanding payment in the amount of $15,903.07.  However, this notice is incorrect as Mr. and Mrs. Goodin are current in all of their payments due under the note.

As you should be aware, the Goodins filed a Chapter 13 bankruptcy on February 18, 2009.  At that time your predecessor, Taylor, Bean & Whitaker ("TBW"), filed a claim in the bankruptcy case alleging a secured claim in the amount of $173,395.36 with arrears of $8,397.53 on May 15, 2009.  I have attached a copy of the Proof of Claim for your review.  The problem appears have occurred when the loan was transferred to Bank of America in September 2009.  Because Bank of America never filed a Notice of Transfer of Claim or address change with the bankruptcy court, payments made by the Chapter 13 Trustee were returned to him.  **The Clerk of the Court in Tampa is currently holding funds intended for TBW in the amount of $8,397.53.**  I have attached a copy of the Report of Standing Trustee for your convenience.  All you must do at this time is to file the appropriate notice of transfer and request distribution of the funds.

BOA 0058

We are hereby making demand on behalf of Ronald and Deborah Goodin that you obtain the funds from the Clerk of Court and take the steps necessary to ensure that the Goodin's account is reflected as current. In the event you fail to comply with these demands immediately or provide legitimate reasons, *in writing*, for your failure to do so, Mr. and Mrs. Goodin have authorized this firm to seek relief in court in the form of a Motion for Contempt, Motion to Enforce, and a lawsuit for violation of the FDCPA and FCCA. Our clients neither waive nor abandon their rights by sending you this demand letter prior to filing suit and in fact, fully intend to attach a copy of this letter as Exhibit "A" to the Complaint. I trust that your actions have been unintentional and that this will be unnecessary.

Please confirm in writing to this office that you will comply with this letter within one week of its receipt. In the meantime, please do not hesitate to contact me should you wish to discuss this matter in further detail.

Sincerely,

Felecia L. Falana

Encs.
cc: Ronald and Deborah Goodin

**BOA 0059**