# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| RONALD GOODIN AND DEBORAH J. GOODIN,<br><br>　　　　　Plaintiffs<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　　Defendant. | Case No. 3:13-cv-00102-TJC-JRK |

## JOINT PRETRIAL STATEMENT

Plaintiffs, Ronald Goodin and Deborah J. Goodin, and Defendant, Bank of America, N.A., through their respective undersigned counsel, pursuant to the Court's Orders entered June 16, 2014 (DE 68), and August 29, 2014 (DE 73), and Rule 3.06, Middle District of Florida Local Rules, file this Joint Pretrial Statement, and state as follows:

## Basis for Federal Jurisdiction

Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for the pendent state law claim.

## Concise Statement of the Nature of the Action

Defendant's alleged acts and omissions in servicing Plaintiffs' mortgage loan allegedly violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; and the Florida Consumer Collection Practices Act ("FCCPA"), §§ 559.55-559.785.

## Brief, General Statement of Each Party's Case

Plaintiffs have sued for alleged violations of the FDCPA and FCCPA. Plaintiffs contend that Defendant provided improper default loan servicing of their mortgage loan upon loan servicing transfer to Defendant.  Plaintiffs were in a Chapter 13 Bankruptcy at the time of the servicing transfer, and Plaintiffs contend that Defendant failed to file a transfer of claim with the Bankruptcy Court, which would have allowed the Trustee could remit Chapter 13 Plan payments to Defendant.  Plaintiffs content that Defendant instead treated Plaintiffs as if they were in default as a result of Defendant not receiving the Chapter 13 Plan payments.  Plaintiffs contend that they put Defendant on notice of the problem by electronic correspondence, phone calls, letters, and appearance at a local banking branch.  Plaintiffs contend that, despite Plaintiffs' efforts, Defendant continued to provide improper default loan servicing up to and beyond a wrongful foreclosure action.  Plaintiffs seek actual damages in the form of emotion distress and punitive damages.

Bank of America contends that it is not a "debt collector" under the FDCPA.  At the time of the alleged FDCPA violation, Bank of America serviced the loan. Bank of America contends that since the loan was not in default at the time that Bank of America began servicing the loan, Bank of America is not a debt collector under 15 USC § 1692a(6)(f)(iii).

To the extent that Bank of America violated the FDCPA or the FCCPA, any violation was not willful, was unintentional, or was the result of *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid any such violation or error.

## List of All Exhibits and Rule 5.04 Exhibit Substitutes to be Offered at Trial With Notation of Objections Thereto

### Exhibits Plaintiffs Expect to Offer

1. The Note for the Subject Property.

2. The Mortgage for the Subject Property.

3.      Plaintiffs' Chapter 13 Plan (Doc. 9) filed in In re <u>Ronald W. Goodin et al.</u>, Case No. 3:09-bk-1061-PMG (the "Bankruptcy").

4.      Plaintiffs' Modified Confirmed Chapter 13 Plan (Doc. 32) filed in the Bankruptcy.

5.      Plaintiffs' Second Modified Confirmed Chapter 13 Plan (Doc. 43) filed in the Bankruptcy.

6.      Mailing from Plaintiffs to Defendant, consisting of Creditor Inquiry Response Form, Notice of Assignment, Sale, or Transfer of Servicing Rights, and partial payment history—BOA 0048-0050.

7.      Letter from Defendant regarding information about fees that may be charged to Plaintiffs' loan while in default status—RESRFP21.

8.      Letter from Plaintiffs to Brian Moynihan—RESRFP151-157.

9.      Letter from Defendant regarding past due payment—RESRFP41.

10.     Partial Statement—RESRFP66.

11.     Partial statement—RESRFP67-69.

12.     Partial statement—RESRFP70-72.

13.     Partial statement—RESRFP73-75.

14.     Partial statement—RESRFP76-78.

15.     Partial statement—RESRFP82.

16.     Statement—RESRFP79-81

17.     Partial statement—RESRFP83-85.

18.     Letter from Defendant—RESRFP86-92.

19.     Notice of Intent to Accelerate and information on foreclosure avoidance—RESRFP93-97

20.     Letter from Defendant dated December 28, 2001, returning a $703.31 check, claiming a partial payment.

21.     Letter from Defendant regarding past due payments—RESRFP99-100.

22.     Letter from Defendant regarding insufficient payment—RESRFP135.

23.     Letter from Defendant regarding insufficient payment—RESRFP133.

24.     Letter from Defendant regarding account being seriously delinquent—RESRFP128-129.

25.     Letter from Defendant regarding insufficient payment—RESRFP127.

26.     Letter from Parker & DuFresne, P.A. to Defendant—BOA 0057-63.

27.     Letter from Defendant regarding account being seriously delinquent—RESRFP125.

28.     Letter from Defendant regarding insufficient payment—RESRFP123.

29.     Letter from Defendant regarding account being seriously delinquent—RESRFP120-121.

30.     Letter from Defendant regarding referral of the Subject Loan to Defendant's Foreclosure Review Committee—RESRFP259.

31.     Verified Complaint for foreclosure, filed in Duval County Case No. 2012-CA-10285.

32.     Statement—RESRFP147-150.

33.     Rejected checks and accompanying letter--RESRFP251-260.

34.     Defendant's Notice of Voluntary Dismissal

35.     Defendant's Transfer of Claim Other than for Security (Doc. 74) filed in In re Ronald W. Goodin et al., Case No. 3:09-bk-1061-PMG.

36.     Printout from U.S. Bankruptcy Court:   Middle District of Florida:   Funds Unclaimed Directory—RESRFP213.

37.     Defendant's Motion for Payment of Unclaimed Funds (Doc. 78) filed in In re Ronald W. Goodin et al., Case No. 3:09-bk-1061-PMG.

38.     Bankruptcy Court's Order Granting Motion for Payment of Unclaimed Funds (Doc. 79) filed in In re Ronald W. Goodin et al., Case No. 3:09-bk-1061-PMG.

39.     Payment History as of 8/12/13, emailed to Austin Brown by Andrew Kemp-Gerstel on August 27, 2013.

40.     AS400 Loan Servicing History—BOA 0171-BOA 0250.

41.     Two Letters that Defendant sent to Plaintiffs titled "REINSTATEMENT CALCULATION," dated October 24, 2013, and October 29, 2013 respectively.

42.     Letter from Selene Finance to Plaintiffs dated November 13, 2014.

43.     Foreclosure counter-claim filing fee—RESRFP146.

44.     Printout of internet inquiry from Plaintiffs—RESRFP160.

45.     Printout of Defendant's response to internet inquiry—RESRF161.

46.     Servicing transfer letter—RESRFP172.

47.     Servicing transfer letter—RESRFP163.

48.     Certified mail receipt for letter sent by Plaintiffs to Brian Moynihan—RESRFP203.

49.     Printout from U.S. Bankruptcy Court:   Middle District of Florida:   Funds Unclaimed Directory dated October 8, 2013—attached to Plaintiffs' Response to Defendant's Motion for Summary Judgment.

50.     Email from Duane Dumler to elooker@defaultawfl.com, dated March 8, 2010.

51.     Report of Standing Trustee (Doc. 52) filed in <u>In re Ronald W. Goodin et al.</u>, Case No. 3:09-bk-1061-PMG.

52.     Chapter 13 Trustee's Final Report and Account (Doc. 53) filed in <u>In re Ronald W. Goodin et al.</u>, Case No. 3:09-bk-1061-PMG.

53.     Schedules RI (Income Statement) and RC (Balance Sheet) of Defendant's most recent Call Report filed with the FDIC, the same schedules from Defendant's year-end 2014 Call Report, and the same schedules for Defendant's year-end 2013 Call Report[1].

54.     Loss Mitigation Home Base Work Action History – 22499871.  BOA 0155-0166.

55.     Defendant's employee training materials—BOA0251-416.

## Exhibits Plaintiffs May Offer if the Need Arises

56.     Copies of checks Plaintiffs paid toward the Subject Loan since August 2009—RESRFP214-248.

57.     Affidavit of Michael Foster dated September 20, 2013.

58.     Defendant's Response to Plaintiffs' discovery requests.

59.     Chapter 13 Bankruptcy Case Information:  Account Ledger—RESRFP4.

60.     Chapter 13 Bankruptcy Case Information:  Account Ledger—RESRFP26-27.

61.     Plaintiffs bank records showing amount of funds in savings—to show Plaintiffs were willing and able to come current.

62.     Bank of America, N.A.'s Response to the Debtors' Motion for Contempt and Sanctions (Doc. 71) filed in In re Ronald W. Goodin et al., Case No. 3:09-bk-1061-PMG

63.     Check from Defendant to Plaintiffs for $703.31—RESRFP42-43.

---

[1] Defendant objects to these exhibits on hearsay and relevancy grounds.

64.     Receipts for mailing and delivery confirmation receipts for any letters mailed by Plaintiffs identified herein.

65.     Plaintiff's Notice of Voluntary Dismissal filed in Duval County foreclosure case no. 2012-CA-10285.

66.     Affidavits filed in the present action taken from any witness, or deposition transcripts of any witness—for impeachment purposes.

67.     Copy of docket for Duval County foreclosure case no. no. 2012-CA-10285.

68.     Any exhibits, papers, records, or writings filed in In re Ronald W. Goodin et al., Case No. 3:09-bk-1061-PMG.

69.     Any and all exhibits, papers, records, or writings attached to, filed with, or referenced in Plaintiffs' or Defendant's prior filings in this case.

70.     Merger documents for BAC Home Loans Servicing, LP, into Bank of America, N.A.:  http://www.fdic.gov/bank/individual/merger/2011/2011.pdf.;

http://www.occ.gov/static/interpretations-and-precedents/jul11/ca1003.pdf

71.     Any documents introduced by Defendant.

72.     Any newly discovered evidence, records, reports, and exhibits.

**<u>Exhibits Bank of America Expects to Offer</u>**

73.     Note - Exhibit 1 to Deborah Goodin's August 28, 2013 deposition.

74.     Mortgage - Exhibit 2 to Deborah Goodin's August 28, 2013 deposition.

75.     Assignment of Mortgage - Exhibit 3 to Deborah Goodin's August 28, 2013 deposition.

76.     Notice of New Servicer dated September11, 2009. - Exhibit 5 to Deborah Goodin's August 28, 2013 deposition.

77.  Loan Payment History dated February 25, 2014.

78.  Loan payoff statement dated February 27, 2014.

79.  Loan reinstatement payment dated February 26, 2014.

80.  Plaintiffs' original Complaint.

81.  Plaintiffs' Amended Complaint.

82.  Plaintiffs' Third Amended Complaint.

83.  Exhibit A to the Third Amended Complaint

84.  AS400 - Bates stamped BOA 0171 - BOA 0250

85.  March 8, 2010 email from Duane Dumler to Bank of America's bankruptcy counsel. The email was provided to Plaintiffs' counsel on September 5, 2013.

86.  Bank of America FDCPA training materials - BOA 0251 - BOA0416

**Exhibits Bank of America May Offer If Need Arises**

87.  All exhibits to Deborah Goodin's August 28, 2013 deposition.

88.  All exhibits to Ronald Goodin's August 28, 2013 deposition.

89.  All exhibits to Tangeia Harrell's deposition.

90.  All exhibits to Michael Foster's deposition.

91.  Bank of America's Notice of Voluntary Dismissal in the state court foreclosure action.

92.  Plaintiffs' Request for Order and Judgment Awarding Attorney's Fees in the state court foreclosure action.

93.  Plaintiffs' Notice of Withdrawing Defendants' Request for Order and Judgment Awarding Attorney's Fees and Costs in the state court foreclosure action.

94.  Copy of docket for the state court foreclosure action.

95.     Plaintiffs Answers to Interrogatories.

96.     Affidavits of Plaintiffs attached to Plaintiffs' Response in Opposition to Bank of America's Motion for Summary Judgment.

## **List of All Witnesses to Be Called at Trial**

### ***Witnesses Plaintiffs and Defendant Expect to Present***

1.     Ronald Goodin

2.     Deborah J. Goodin

3.     Tangeia Harrell

4.     Michael Foster

5.     Justin Holcombe, Confirmed Plan/Claims Administrator, Office of Douglas W. Neway, Chapter 13 Trustee; or record custodian/qualified witness.

### **Witnesses Plaintiffs May Call if the Need Arises**

6.     Record custodian or other qualified witness of Defendant to provide foundation for any records/documents produced by Defendant identified herein.

## **List of Expert Witnesses, and Statement of Subject Matter and Summary of Testimony**

No expert witness testimony will be presented at trial.

## **Statement of the Elements of Each Money Damages Claim and Amount Being Sought for Alleged Emotional Distress[2]**

Mr. Goodin

Mr. Goodin seeks $700,000.00 in emotional distress damages.

Beginning around November 2009, Bank of America's actions and inactions have caused Mr. Goodin severe emotional distress in the form of severe and long term anxiety, depression,

---

[2] Bank of America dispute Plaintiffs' right to any award for actual damages. Bank of America disputes the entirety of this section.

sleeplessness, and loss of appetite.  For years, Mr. Goodin was worried that at any time he may be served with foreclosure papers, which did in fact happen.  When Mr. Goodin was served with foreclosure papers, from the stress of thoughts of being kicked out of his home and possibly becoming homeless, Mr. Goodin suffered chest pain, tightness of the chest, weakness, and dizziness—he felt that he was having a heart attack.  Now that the foreclosure suit has been dismissed, Mr. Goodin still fears that it may happen again because no matter what lengths he goes to, he cannot prevent Bank of America from improperly providing default loan servicing on his loan.  Mr. Goodin has been embarrassed about being in foreclosure, and fearful of who may know about the matter, and what those person's opinions of him might be—including family, friends, and neighbors.  Mr. Goodin has also been fearful of the embarrassment that would result from him and his Wife being kicked out of their home and their possessions thrown out of our home.  Mr. Goodin has suffered a high degree of anger resulting from witnessing Mrs. Goodin cry over these matters—he feels insulted and helpless.  Instead of enjoying retirement and Mrs. Goodins' company, Mr. Goodin has been consumed by thoughts of saving or losing his home.  The Goodins have often been unpleasant and irritable towards each other because of the stress they have been under.  They have been faced with the possibility of homelessness or living in a bad neighborhood because of their credit.  Mr. Goodin's life will never be the same because of Bank of America's actions and inactions.

<u>Mrs. Goodin</u>

Mrs. Goodin seeks $500,000.00 in emotional distress damages.

Beginning around November 2009, Bank of America's actions and inactions have caused Mrs. Goodin severe emotional distress in the form of severe and longterm anxiety, depression, sleeplessness, and loss of appetite.  Mrs. Goodin has often been sick to her stomach, and cries

about the issues in this case.  Mrs. Goodin often wakes up worried, and sick to her stomach, and loses sleep because of the fear of losing her home.  For years, Mrs. Goodin has been worried that at any time she may be served with foreclosure papers, which did in fact happen.  Now that the foreclosure suit has been dismissed, Mrs. Goodin still fears that it may happen again because no matter what lengths she goes to, she cannot prevent Bank of America from improperly providing default loan servicing on her loan.  For years Mrs. Goodin has hid in her house and not wanted to associate with people because she has been worried about the issues of this case.  Instead of enjoying retirement and Mr. Goodins' and her family's company, she has been consumed with thoughts of saving or losing her home.  The Goodins' have often been unpleasant and irritable towards each other because of the stress they have been under.  Mrs. Goodin has been faced with the possibility of homelessness or living in a bad neighborhood because of bad credit.  Mrs. Goodin used to visit with her father and sister often, but since all of this has been going on, she has been distanced from her father and sister because Mrs. Goodin's Father is elderly, and she did not want to cause him stress.  Because of all of this, Mrs. Goodin was forced to distance herself from her family for fear of causing others harm, and for being consumed by fear.

## **Punitive Damages**[3]

The Goodins seek $10,000,000.00 in punitive damages.  This amount is a function of Defendant's net worth and ability to pay—or in other words, what it would take to deter Defendant without bankrupting defendant.  Plaintiffs believe this amount falls short of the proper amount, as Defendant's net worth is in the trillions, but Plaintiffs are seeking to keep the amount reasonably related to the actual damages sought, as analyzed by case law regarding constitutional concerns of punitive damages amounts.

---

[3] Bank of America disputes Plaintiffs' right to any punitive damages. Bank of America disputes the entirety of this section.

The FCCPA provides for punitive damages when there is malicious intent; and "malice" is defined as, "a wrongful act done to inflict injury or without a reasonable cause or excuse." Plaintiffs contend that the facts disclosed herein and throughout the pleadings make a showing of malicious intent, and the evidence at trial will do the same.

**Statutory damages**

Each Plaintiff is seeking $1,000.00 in statutory damages.  The factors in determining an amount of statutory damages are the nature of defendant's noncompliance with the FCCPA, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional.  Plaintiffs' position is that all of these factors are well satisfied based on all of the considerations already stated in this section.

**List of Depositions to Be Offered Into Evidence, Including Designation of Pages/Lines to Be Offered**

Based on the witnesses the Parties have agreed to produce, no depositions will be entered into evidence.

**Concise Statement of Facts Admitted, Requiring No Proof at Trial, Together with Any Reservations Directed at Such Admissions**

1.      On November 13, 2006, Plaintiffs executed and delivered a note and mortgage securing payment of the same to Taylor, Bean & Whitaker Mortgage Corp. ("TBW").

2.      On February 18, 2009, Plaintiffs filed a voluntary bankruptcy petition in the Middle District of Florida, Bankruptcy Division ("Bankruptcy Court"), Case No.: 3:09-bk-1061 ("Bankruptcy Action").

3.      Plaintiffs listed TBW as a creditor and TBW filed its proof of claim on May 15, 2009 (claim #4-1) in the amount of $173,395.36.

4.      Plaintiffs' Chapter 13 plan provided that the bankruptcy trustee, Douglas W. Neway, ("Trustee") would pay Plaintiffs' regular monthly loan payment and the amount of Plaintiffs' arrears out of Plaintiffs' monthly payments to the Trustee.

5.      As per Plaintiffs' Initial Chapter 13 Plan, the Trustee was due to pay the last incremental payment of Plaintiffs' mortgage loan arrearage to TBW in February of 2014.

6.      The Chapter 13 plan was confirmed May 19, 2009.

7.      On August 26, 2009, the servicing of the Plaintiffs' loan was transferred to Defendant.

8.      The automatic stay provisions of 11 USC § 362 were in effect at the time that Bank of America or its predecessor, BAC Home Loans, began servicing the Loan.

9.      At all times, Plaintiffs fully complied with, completed, and paid off their Chapter 13 Plan.

10.     Upon the transfer of servicing rights to Defendant, the loan was placed into Defendant's bankruptcy department.

11.      On March 8, 2010, Defendant's employee, Duane Dumler, sent an email to Defendant's outside bankruptcy counsel requesting that a transfer of claim be filed for the loan.

12.     On March 15, 2010, Bank of America bankruptcy associate Leslie Hodkinson sent a second email to Bank of America's outside bankruptcy counsel asking whether the transfer of claim had been filed in the bankruptcy matter.

13.     On May 28, 2010, Leslie Hodkinson sent a third email to Bank of America's outside bankruptcy counsel asking whether the transfer of claim had been filed in the bankruptcy matter.

14.     Plaintiffs' Chapter 13 Plan was modified on September 23, 2009.

15.     On or about November 20, 2009, during a phone conversation, a representative of Defendant informed Plaintiffs that Defendant had not been receiving mortgage payments for four months and that Plaintiffs' account was being charged late fees of $49.06 for each month.

16.     By letter dated November 23, 2009, Plaintiffs notified the Trustee that Defendant had not been receiving mortgage payments

17.     Plaintiffs completed their Chapter 13 plan on December 8, 2009.

18.     Plaintiffs Chapter 13 Plan was modified a second time on February 17, 2010.

19.     After Plaintiffs completed their Chapter 13 plan, they began making payments directly to Defendant.

20.     Plaintiffs' made their final Chapter 13 Plan payment on the 10th month of the Bankruptcy, and the Bankruptcy was completed on December 8, 2009, as per the Chapter 13 Standing Trustee's Final Report and Account (Doc. 53 of Bankruptcy).

21.     On or about December 27, 2011, Bank of America sent Plaintiffs a "NOTICE OF INTENT TO ACCELERATE.

22.     Beginning April 16, 2012, Bank of America began returning checks to Plaintiffs.

23.     Defendant returned checks in the amount of $1,226.55 dated April 1, 2012; April 27, 2012; May 30, 2012; July 1, 2012; July 30, 2012; and September 1, 2012.

24.     On September 17, 2012, Bank of America filed a mortgage foreclosure action against Plaintiffs in the Fourth Judicial Circuit in and for Duval County, Florida, bearing case number 2012-CA-10285.

25.     Bank of America's voluntarily dismissed its foreclosure action on March 22, 2013.

26.     Bank of America filed a transfer of claim on February 4, 2013, identifying the Transferee as Bank of America, N.A., identifying the Transferor as TBW.

27.     Bank of America filed a Motion for Payment of Unclaimed Funds on August 21, 2013.

28.     The Bankruptcy Court entered an Order granting the Motion on September 5, 2013.

29.     The Trustee held unclaimed funds in the amount of $14,530.28 in the court registry until the Bankruptcy Court entered its Order Granting Motion for Payment of Unclaimed Funds on September 5, 2013.

**Concise Statement of Applicable Principals of Law on Which there is Agreement**

30.     Plaintiffs are "consumers" as defined by the FDCPA and FCCPA.

31.     This action involves a "debt" or "consumer debt" as defined by the FDCPA and FCCPA.

32.     Defendant began servicing the Subject Loan on August 26, 2009.

33.     Plaintiffs loan documents provide that Plaintiffs would be in default if they fail to pay two or more consecutive monthly payments.

**Concise Statement of Issues of Fact Which Remain to be Litigated**

34.     Whether Defendant called Plaintiffs at least 97 times from January 1, 2012 to March 27, 2012, regarding their loan being in default.

35.     Defendant's net worth and profits, as it relates to Defendant's ability to pay punitive damages, or what the proper amount would be to deter Defendant.

36.     Whether Plaintiffs failed to pay their payments in accordance with the Note and Mortgage beginning with their August 2008 monthly mortgage payment.

37.     Whether Plaintiffs notified Bank of America of the necessity of filing the transfer of claim by appearing at a local Bank of America branch and by letter to Bank of America's CEO dated November 29, 2010.

38.     Whether the Trustee addressed Plaintiffs concerns via letter stating that payments to the mortgage company are on hold because of the Trustee's need for Defendant to file a transfer of claim with the Bankruptcy Court.

39.     Defendant contends that at all relevant times, Bank of America had a system in place whereby an audit was to be performed on a loan before the loan left the bankruptcy department. Defendant contends the following steps are included in the audit: a) Identification of all funds sent by the trustee to Bank of America to ensure the accuracy of Bank of America's records; b) Review of the Proof of Claim; c) Review of the manner in which Bank of America applied funds in Bank of America's system; d) Review of escrowed amounts to insure the absence of any unreasonable shortage; e) Review of fees charged to the loan, both prior to the bankruptcy petition and after the bankruptcy petition; f) Identification and missing payment; g) Follow up on any missing payments;  and h) Reconciliation of all payments and fees.

40.     Only upon the completion of the audit is a loan to be released from Defendant's bankruptcy department.

41.     The Loan was released from Defendant's bankruptcy department to Foreclosure Referral Review as a result of human error.

42.     This Loan should have been released to Normal Servicing rather than to Foreclosure Referral Review.

43.     Bank of America bankruptcy associate Jason Juarez appears to have missed the notation reflecting that the trustee checks were missing.

44.     According to the training Jason Juarez received and according to Bank of America's policies regarding information to be reviewed before a loan is released from the bankruptcy department, Jason Juarez should have reviewed the trustee disbursements.

45.     Had Jason Juarez, or another bankruptcy associate, properly reviewed the trustee disbursements he would have recognized that any missing payments were either being held by the bankruptcy trustee or had been sent by the bankruptcy trustee to the court registry.

46.     However, it appears that Jason Juarez, upon reviewing the trustee disbursements, mistakenly failed to identify that funds were being held and that there were no amounts applied against the Proof of Claim.

47.     Had Jason Juarez identified that funds were being held and that there were no amounts applied against the Proof of Claim Item, his training would mandate that he escalate the issue to a team manager.

48.     Had Jason Juarez, or another bankruptcy associate or a team manager, recognized that any missing payments were either being held by the bankruptcy trustee or had been sent by the bankruptcy trustee to the court registry, the loan would have been placed into Normal Servicing rather than Foreclosure Referral Review.

49.     At all relevant times, Bank of America had specific procedures in place aimed at avoiding instances where a loan is improperly placed into Foreclosure Referral Review from bankruptcy rather than into Normal Servicing.

50.     Bank of America's bankruptcy associates receive training regarding compliance with consumer collection practices statutes.

51.     Bank of America's bankruptcy associates receive training regarding compliance with the FDCPA.

52.     Bank of America's bankruptcy associates receive training regarding compliance with the FDCPA on a yearly basis.

53.     Plaintiffs contend that Defendant's AS400 notes log contains numerous entries over time evidencing Defendant's knowledge of Plaintiffs' bankruptcy, the need for Defendant to file a transfer of claim, Defendant's improper default loan servicing, and the wrongfulness of its actions.  The AS400 Notes log evidences Defendant's knowing and intentional conduct.

54.     Plaintiffs received multiple letters and statements from Defendant, which Plaintiffs contend violate the FDCPA and FCCPA by misrepresenting the amount, status, and character of the debt.  Plaintiffs contend that these respective letters were received shortly after the date each letter concerns or states.  Plaintiffs contend these letters were produced by Defendant on or about 10/8/10, 12/3/10, 3/14/11, 4/25/11, 5/2/11, 6/1/11, 7/1/11, 8/1/11, 9/1/11, 12/1/11, 12/27/11, 12/27/11, 12/28/11, 12/28/11, 1/13/12, 1/17/12, 1/30/12, 1/30/12, 2/9/12, 2/28/12, 3/16/12, 3/29/12, 4/16/12, 4/30/12, 1/2/13, 10/24/13, 10/29/13.  Additionally, letters accompanied the checks that Defendant returned to Plaintiff.

55.     Plaintiffs contend that they notified Defendant of its errors on multiple occasions by way of letters.

56.     Plaintiffs contend they called Defendant at least nine times to discuss the fact that Defendant was improperly servicing their loan and reflecting their loan as past due, when the loan should have been contractually current.  Also, Plaintiffs called to inform Defendant that the reason why Defendant was in error was because Defendant failed to file a transfer of claim in the Bankruptcy Court.  Plaintiffs called on 11/10/19/10, 11/3/10, 6/6/11, 6/10/11, 9/14/11, 9/14/11, 10/12/11, 11/9/11.

57.     Plaintiffs contend that they also corresponded with Defendant via electronic internet communication about improper default loan servicing.

58.     Plaintiffs contend that they were in arrears/default on their mortgage until December 2009, as that was when they paid their final mortgage arrears payment to the Trustee.

59.     Plaintiffs received a letter dated November 13, 2014, from Selene Finance LP, stating, "Selene Finance LP (Selene) is the servicer of your mortgage loan which is currently in default."

**Concise Statement of Issues of Law Which Remain for Determination by the Court**

60.     Whether Plaintiffs were in default on their loan on August 26, 2009—the date on which Defendant began servicing the loan, which is dispositive of whether Defendant is a debt collector, as defined by the FDCPA.

61.     Whether Defendant's alleged conduct violated the FDCPA—15 U.S.C. § 1692e(2)(a), (4), (5), (10).

62.     Whether Defendant's alleged conduct violated the FCCPA—section 559.72(9), Florida Statutes.  More specifically, whether Defendant made any claim, attempt, or threat to enforce a debt while knowing the debt was not legitimate, and/or whether Defendant made any assertion of the existence of some other legal right while knowing that such a right did not exist.

63.     Whether Defendant's alleged conduct was done with malicious intent, as defined by case law interpreting the FCCPA punitive damages provision.  Section 559.77, Florida Statutes.

64.     Whether Plaintiffs have suffered actual damages in the form of emotional distress as a result of Defendant's alleged conduct.

65.     Whether any violation of the FDCPA or FCCPA by Defendant was unintentional or the result of *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid any such violation or error.

66.     Plaintiffs' entitlement to injunctive relief under the FCCPA.

67.     Since servicing of the loan has transferred to a different entity, Plaintiffs are interested in Defendant being ordered to take the necessary steps to properly inform the new servicer of the status of the loan, the need to offer Plaintiffs a reinstatement that is unconditional and without default related fees/costs, and to otherwise facilitate such a reinstatement. Defendant contends that this is not within the scope of the pleadings.

## Concise Statement of Any Disagreement as to the Application of the Federal Rules of Evidence or Federal Rules of Civil Procedure

There is no such disagreement between the parties at this time.

## List of All Motion or Other Matters Which Require Action by the Court

There are no currently pending motions.  Parties may file motions in limine contemporaneous with this Joint Pretrial Statement.

**PARKER & DUFRESNE, P.A.**

_____/s/ Austin Brown_____

Austin Brown, Esq.
Florida Bar No. 96633
Parker & DuFresne, P.A.
8777 San Jose Blvd., Ste. 301
Jacksonville, Florida 32217
Telephone:  (904) 733-7766
Facsimile: (904) 733-2919
abrown@jaxlawcenter.com
**Trial Counsel for Plaintiffs**

/s/Andrew Kemp-Gerstel (with permission)
J. RANDOLPH LIEBLER
Florida Bar No. 507954
E-mail:  jrl@lgplaw.com
ANDREW KEMP-GERSTEL
Florida Bar No. 0044332
E-mail: akg@lgplaw.com
Attorneys for Bank of America, N.A.
**LIEBLER, GONZALEZ & PORTUONDO, P.A.**
Courthouse Tower - 25th Floor
44 West Flagler Street

Miami, FL 33130
Telephone:  (305) 379-0400
Fax:  (305) 379-9626

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 8, 2015, I electronically filed the foregoing
document with the Clerk of the Court using CM/ECF, which will transmit Notice of Electronic
Filing to counsel of Record.

_____/s/ Austin Brown_____
Attorney