# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | |
|---|---|
| RONALD GOODIN AND DEBORAH J. GOODIN,<br><br>　　　　Plaintiffs<br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>　　　　Defendant. | Case No. 3:13-cv-00102-TJC-JRK |

### PLAINTIFFS' TRIAL BRIEF

Plaintiffs, Ronald Goodin and Deborah J. Goodin, through the undersigned counsel, pursuant to the Court's Order Scheduling Trial entered February 4, 2015 (DE 83), file this trial brief, and state as follows:

**I.  STATEMENT OF FACTS**

On November 13, 2006, Plaintiffs executed and delivered a note and mortgage securing payment of the same to Taylor, Bean & Whitaker Mortgage Corp. ("TBW") to finance the purchase of their home ("Subject Property" or "Subject Loan").  On August 26, 2009, when servicing of the Subject Loan transferred from TBW to Defendant, Plaintiffs were involved in a Chapter 13 bankruptcy proceeding (filed February 18, 2009) in which Plaintiffs listed TBW as a creditor for the Subject Loan.  Per the Chapter 13 Plan, the bankruptcy trustee ("Trustee") was to pay Plaintiffs' monthly mortgage payment, and an incremental share of Plaintiffs' $8,397.53 arrearage, every month, for 60 months, through February 2014.

However, when servicing of the Subject Loan transferred to Defendant, Defendant failed to file a transfer of claim with the Bankruptcy Court, which was required for the Trustee to remit payments to Defendant instead of TBW. Plaintiffs expended far more energy than should be reasonably expected to notify Defendant of the need to file a transfer of claim, and to request that Defendant file a transfer of claim. Plaintiffs called Defendant on numerous occasions, emailed Defendant, appeared at a local branch, sent letters to Defendant, and sent a letter to Defendant's CEO.

Not only were Plaintiff's extraordinary attempts to fix their loan futile, Defendant responded by providing Plaintiffs with a Notice of Acceleration. Plaintiffs consulted with the undersigned attorneys who wrote Defendant a letter identifying the problem, telling Defendant how to fix the problem, and telling Defendant to fix the problem or face a lawsuit. Defendant responded by filing a foreclosure against Plaintiffs.

It was not until October 24, 2013, that Defendant claimed the funds being held in the unclaimed funds registry and notified Plaintiffs of the same (by way of a reinstatement quote requesting that Plaintiffs pay a monetary sum qualified with language that the sum may not be sufficient to reinstate the Subject Loan, and foreclosure fees and costs would be added onto the total if Plaintiffs did not pay). The Defendant claimed and applied the funds:

- over four (4) years after the servicing transfer (8/26/09);
- almost four (4) years after Plaintiffs *first* called Defendant about the problem (11/9/09), among ten other times;
- almost four (4) years after Defendant's customer service and bankruptcy departments received (12/17/09 and 12/18/09 respectively) a letter that Plaintiffs forwarded from the

Trustee stating that payments are on hold because of Defendant's need to file a transfer of claim;

- almost three (3) years after Plaintiffs appeared at a local branch to discuss the problem (about 12/10/10);

- almost three (3) years after Defendant received a letter addressed to Brian Moynihan, Defendant's CEO, from Plaintiffs about the problem (12/10/10);

- over two (2) years after Defendant received an internet inquiry from Plaintiffs (on or about June 6, 2011) about the problem;

- one year and seven months after Defendant received the demand/notice letter identified above from Plaintiffs' attorneys (3/22/12);

- almost one year after Plaintiffs filed their Answer, Affirmative Defenses, and Counterclaims in the wrongful foreclosure action (11/13/12);

- almost nine months after Plaintiffs filed the present case (1/28/13);

- seven months after Defendant dismissed its wrongful foreclosure action (3/22/13);

With that said, Plaintiffs notified Defendant of the problem 17 times before the current action was filed. This does not include many times that Plaintiffs informed Defendant during Defendant's outgoing debt collection calls, and does not include the times where Defendant was notified by other sources. Plaintiffs literally did everything they could short of parading in front of Bank of America Tower wearing sandwich boards requesting that Defendant fix the Subject Loan.

All but one of these notices were recorded in Defendant's AS400 Notes Log—througout the sections labelled Customer Service, Foreclosure Collections, Bankruptcy, CFC Foreclosure, and Loss Mitigation sections, among others. Numerous employees of the Defendant, from low-

level to management to legal counsel, from many different departments, were involved in receiving notice, recording notice, reviewing the notes and loan file, and taking intentional actions to collect a debt that Defendant mischaracterized and misrepresented, and taking actions that were not authorized by law or the Subject Loan—all while knowing of the problem, the wrongfulness of its actions, and how it affected Plaintiffs.  Plaintiffs were never able to get an unqualified reinstatement quote from Defendant that delineated a sum certain due by a date certain such that the Subject Loan would be reinstated.  Instead, in what could be characterized as the cruelest of all possible conduct,  the Defendant, in the midst of this ongoing litigation, transferred loan servicing to Selene Finance LP, which then declared Plaintiffs to be in default, beginning anew Plaintiff's travails through servicing purgatory.

II. **LIABILITY ANALYSIS**

   a. **Count I:  FDCPA**

The elements of an FDCPA claim are as follows:  "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000) (citing Sibley v. Firstcollect, Inc., 913 F. Supp. 469, 470 (M.D. La. 1995)).  Further, the definition of "debt"[1] incorporates the definition of "consumer."[2]

---

[1] "The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 1692a(5).

[2] "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." § 1692a(3).

### i. Element 1: Plaintiffs have been the object of collection activity arising from a "consumer debt"

The Parties stipulated that "Plaintiffs are 'consumers' as defined by the FDCPA and FCCPA" and that "[t]his action involves a 'debt' or 'consumer debt' as defined by the FDCPA and FCCPA." (Joint Pretrial Statement 18 "JPS" DE 75). With respect to this element, this leaves the issue as to whether Plaintiffs were the object of collection activity. Plaintiffs received monthly statements from Defendant demanding payment of principal, interest, escrow, late fees, foreclosure fees, and so on; Plaintiffs received letters demanding payment of past due money to avoid foreclosure; Plaintiffs received a Notice of Intent to Accelerate demanding $15,903.07 to avoid foreclosure; Defendant filed a foreclosure lawsuit regarding the Subject Property, requesting a deficiency judgment from the foreclosure court; and Defendant initiated numerous collection calls to Plaintiffs. Plaintiffs have been the object of collection activity.

### ii. Element 2: Defendant is a "debt collector" as defined by the FDCPA

The Parties previously briefed this issue well in Defendant's Motion for Summary Judgment (DE 38, pp. 3-6) and Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (DE 43, pp. 2-11), so Plaintiffs will be brief here. It is *well established* that a loan servicer is a "debt collector" if it services a loan that it acquired while the loan was in default. N. Star Capital Acquisitions, LLC v. Krig, 611 F. Supp. 2d 1324, 1335 (M.D. Fla. 2009).

Plaintiffs can establish that Defendant is a "debt collector" by at least six different angles. First, Defendant's second Rule 30(b)(6) witness, Michael Foster, testified during deposition that the Subject Loan provides that the loan is in default when two consecutive monthly payments are missed, and that the amount that Plaintiffs were in arrears at the time Defendant began servicing the loan was equivalent to two or more monthly payments. DE 43, p. 5. Second, Mike Foster testified that Plaintiffs' first six payments to Defendant after being discharged from bankruptcy

were applied to months prior to Defendant taking over servicing of the loan, indicating that Plaintiffs were in arrears by six monthly payments when Defendant began servicing the Subject Loan.  DE 43, pp. 5-6.  Third, Plaintiffs' Chapter 13 Plan provided for the payment of arrears over a 60 month period beginning on March 20, 2009, through February 2014.  DE 43, p. 6.  Fourth, the Trustee held unclaimed funds in the amount of $14,530.28 at least until after the Bankruptcy Court granted Defendant's Motion for Payment of Unclaimed Funds on September 5, 2013.  PTS ¶¶ 27-29.  Fifth, Defendant notified Plaintiffs on multiple occasions that Defendant is deemed a debt collector and was attempting to collect a debt.  DE 43, pp. 6-7.  Sixth, Defendant treated the loan as if it were in default when it was transferred to Defendant.  DE 43, p. 7.

### iii.   **Element 3:  The Defendant engaged in an act or omission prohibited by the FDCPA**

With respect to prohibited acts or omissions, Plaintiffs alleged § 1692e(2)(a), (5), (10).  The language of these sections is as follows:  Section § 1692e provides, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Section § 1692e(2)(a) prohibits, "The false representation of . . . the character, amount, or legal status of any debt."  Section § 1692e(5) prohibits, "The threat to take any action that cannot legally be taken or that is not intended to be taken."  Section § 1692e(10) prohibits, "The use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."

All of these sections were violated by Defendant's statements demanding improper amounts, Defendant's Notice of Acceleration stating Defendant's nonexistent right to foreclose, Defendant's wrongful foreclosure action requesting a deficiency judgment, Defendant's improper reinstatement letter, and so on.

### b. Count II: FCCPA

To establish a violation of the FCCPA in the present context, Plaintiffs have the burden of establishing three elements: 1) they are "consumers" or "debtors"; 2) that there is a "debt"; and 3) there is a violation of one of the enumerated prohibited acts. See §§ 559.55, 559.72, 559.77, Fla. Stat.

#### i. Elements 1 & 2: Plaintiffs are "consumers" and there is a "debt"

Plaintiffs incorporate by reference their analysis from Section II.a.i. here, as the analysis is identical.

#### ii. Element 3: violation of a prohibited act

With respect to prohibited acts or omissions, Plaintiffs alleged section 559.72(9), Florida Statutes, which provides, "no person shall claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such persons knows the right does not exist." Plaintiffs incorporate their analysis from Section II.a.iii. here, as the analysis is almost identical.

## III. DAMAGES

### a. Actual Damages: Emotional Distress

The FDCPA and FCCPA provide for actual damages in the form of emotional distress damages. E.g., Minnifield v. Joynson & Freedman, LLC, 448 Fed. App'x 914, 916 (11th Cir. 2011). Emotional distress damages may be proved through lay testimony,[3] so long as sufficiently

---

[3] See McLean v. GMAC Mortg. Corp., 595 F. Supp. 2d 1360, 1369-70 (S.D. Fla. 2009), aff'd, 398 Fed. App'x 467, 471 (11th Cir. 2010).

articulated and non-conclusory testimony establishes demonstrable emotional distress,[4] and the requirements to establish negligent or intentional infliction of emotional distress are inapplicable.[5] See also Barker v. Tomlinson, No. 8:05-CV-1390-T-27EAJ, 2006 WL 1679645, *3 (M.D. Fla. June 7, 2006) (awarding damages "under both [the FDCPA and FCCPA] for the fear, anxiety, embarrassment, and emotional distress caused by Defendant" when "[the Court found] Plaintiff's testimony credible and demonstrative of genuine fear of arrest and other criminal punishment, anxiety for her children's well-being, embarrassment at her workplace, and emotional distress upon answering the phone for a period of two months.").

At trial, Plaintiffs will give detailed, competent, and demonstrable testimony that, for over five years, Plaintiffs have been in fear of losing their home and eviction, and leaving their home for fear of coming home to find their possessions in their lawn at any time; Plaintiffs have been in fear of having neighbors, friends, and/or family witness or know of their ongoing purported default; Plaintiffs' marriage has been tested because of the same to the extent that it caused them to separate for a month and almost divorce; Plaintiffs no longer enjoy their lives, and each other's company or marriage as they used to because precariousness of one element of survival—shelter— has loomed over them; Plaintiffs have lost sleep, lost appetite, felt sick, felt anxiety, suffered embarrassment, suffered depression, felt oppressed; Plaintiffs no longer associate with their family as they used to for fear of embarrassment or causing their family worry; Mrs. Goodin has constantly cried and worried; Mr. Goodin has constantly worried and been angered by witnessing his wife suffer so and by his helplessness in the situation; Mr. Goodin felt such intense pressure

---

[4] McLean, 398 Fed. App'x at 471-72.
[5] McLean, 595 F. Supp. 2d at 1369-70.

and stress upon being served with the wrongful foreclosure complaint that he felt as though he was having a heart attack; Plaintiffs fear their situation will cause them homelessness; and so on.

### b. Punitive Damages

#### i. Entitlement

The Court has discretion to award punitive damages in an FCCPA action where a debt collector acts with malicious intent. See, e.g., Montgomery v. Fla. First Fin. Group, Inc., No. 6:06-cv-1639-Orl-31KRS, 2008 WL 3540374, *10 (M.D. Fla. Aug 12, 2008) (quoting Tallahassee Title Co. v. Dean, 411 So. 2d 204, 205 (Fla. 1st Dist. Ct. App. 1982) ("Malice . . . imports a wrongful act done to inflict injury or without a reasonable cause or excuse."). This standard for punitive damages, which has been carried forward to the present day by state courts and the Middle District of Florida alike, was articulated by Florida's First District Court of Appeal in Story v. J.M. Fields, Inc.:

> Our Supreme Court has differentiated between conduct which subjects a creditor to liability for actual or statutory damages and conduct which subjects him additionally to conventional punitive damages: the former remedy is appropriate when willfulness is shown but "the legal standard of malice is not met" and the latter sanction is applied when "malicious intent" is proved. Harris v. Beneficial Finance Co. of Jacksonville, 338 So.2d 196, 200 (Fla.1976). Thus willfulness is as defined by the Court in Chandler v. Kendrick, 108 Fla. 450, 452, 146 So. 551, 552 (1933), characterizing language in the usury statute:
>
>> 'A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so.'
>
> See also Dezell v. King, 91 So.2d 624, 626 (Fla.1956). Malice, on the other hand, imports a wrongful act done to inflict injury or without a reasonable cause or excuse. Wilson v. O'Neal, 118 So. 2d 101 (Fla. 1st DCA 1960).

343 So. 2d 675 (Fla. 1st DCA 1977).

The facts illustrated above will be proven at trial by competent evidence and will establish that despite repeated notices to many Bank of America employees from low-level to management to

attorney, that were unmistakably documented throughout Defendants AS400 Notes Log—no less than 16 times—in many different departments, Defendant willfully mailed numerous letters to Plaintiffs misstating the character and status of the debt and Defendants nonexistent rights to accelerate the Subject Loan and foreclose on the Subject Property; Defendant willfully and repeatedly placed collection calls to Plaintiffs; Defendant willfully served Plaintiffs with a Notice of Acceleration demanding an improper, un-owed amount of money and threatening a wrongful foreclosure; after receiving a letter in response to the Notice of Acceleration from Plaintiffs' attorneys, Defendant willfully filed a wrongful *Verified* Foreclosure Complaint; a whole seven months after dismissing the wrongful foreclosure action, Defendant willfully sent plaintiff a reinstatement quote demanding payment of an amount with language that the amount may not be enough to reinstate the Subject Loan but that if Plaintiffs do not pay the money, all of the improper foreclosure costs and fees would be charged to Plaintiffs. Defendant's records show more and more documented notices, more and more documented reviews of Plaintiffs' loan file, and increasingly more deliberate actions of Defendant.

      The facts of this Case are the epitome of "a wrongful act . . . done without a reasonable cause or excuse." If not, this language should be stricken from the standard of FCCPA punitive damages, as Plaintiffs literally could not have done anything more to notify Defendant that its actions were without reasonable cause or excuse. The Story case is illustrative. The Story court, in relation to the FCCPA's provision for calling with such frequency so as to harass, stated that a creditor/debt collector may call "to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation." 343 So. 2d at 677. "[H]owever, when [the calls] continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed," the communications could reasonably be expected to harass the debtor or his family. Id. Further, "[i]f his communications evidence a purpose to inflict insult and injury, or are wholly without excuse, punitive damages may be awarded." Id. The Story court concluded that the communications were violative in that they were harassing, but that the demand for

payment did not lack cause. Id. at 677-78. In summary, calling to the extent of harassment is a violation of the FCCPA, but because there was no issue as to whether the money was owed, the defendant's actions did not lack a purpose.

In the present case, Defendants actions are wholly without reasonable cause or excuse: Plaintiffs had not defaulted. They did everything they were supposed to, and more. Plaintiffs paid their monthly payments while warning Defendant of its improper acts and omissions, until Defendant began returning Plaintiffs' checks and filed a foreclosure. This was despite numerous notices to the extent that Plaintiffs could have done no more to warn Defendant that Defendant was blaming Plaintiffs for being in default because of Defendant's conduct. After Defendant began acting intentionally to either collect an un-owed amount or to foreclose, with knowledge of the impropriety of such actions, Defendant was acting without a reasonable cause or excuse. In other words, no mistake of fact or law existed at some point in this continuum—at least as far back as when Defendant received the undersigned firm's demand/notice letter.

### ii. Amount

The amount of punitive damages should be "a sum of money which, according to his financial ability, will hurt, but not bankrupt." Myers v. Central Florida Investments, Inc., 592 F.3d 1201, 1216 (11th Cir. 2010) (quoting Bould v. Touchette, 349 So. 2d 1181, 1186-87 (Fla. 1977)). A defendant's net worth is thus a factor in calculating punitive damages, and evidence of a Defendant's wealth such as balance sheets and income statements are relevant. See, e.g., Williams v. South Lubes, Inc., No. 1:12-cv-180-SPM-GRJ, 2012 WL 6135170, *1 (N.D. Fla. Dec. 3, 2012). Defendant's Balance Sheet for the third quarter in 2013 filed with the FDIC[6] ("Balance Sheet") shows Defendant's net worth as

---

[6] Attached as Exhibit C to Plaintiff's Request for Judicial Notice (DE 77-3), which the Court granted on January 23, 2015 (DE 81).

$182,092,000,000.00.[7] With that said, nothing the Court might award would bankrupt Defendant. The question is what will get Defendant's attention or deter Defendant from future conduct?

For further guidance, Plaintiffs can point to an eerily similar case: Toddie v. GMAC Mortgage LLC, No. 4:08-cv-00002, 2009 WL 3842352 (M.D. Ga. March 26, 2009). In Toddie, the plaintiff fell behind on his mortgage payments, plaintiff filed for Chapter 13 bankruptcy, at which time servicing of his mortgage changed hands to GMAC Mortgage, plaintiff fully complied with his Chapter 13 plan, GMAC declared plaintiff behind, GMAC began refusing checks from plaintiff, and GMAC eventually foreclosed. Id. The jury awarded $500,000.00 for emotional distress, $70,000.00 in other compensatory damages, and $2,000,001 in punitive damages. Id. The plaintiff "reportedly remained in the home by renting it from the new owner. Id. In the present case there are two plaintiffs.

### iii. No Punitive Damages Cap

Counsel for Defendant alluded to a punitive damages cap at the Final Pre-Trial Conference. Plaintiffs assume Counsel for Defendant was referring to section 768.73, Florida Statutes, which provides that punitive damages may not exceed the greater of three times the amount of compensatory damages for each plaintiff or the sum of $500,000.00. This statutory section is inapplicable to the present case, for the following reasons: First, section 768.71(1), Florida Statutes—Applicability; conflicts—provides, "Except as otherwise specifically provided, this part applies to any action for damages, whether in tort or in contract." The present Action is not in Tort or Contract. Section 768.73 is under Title XLV—Torts, Chapter 768-Negligence, and Part II-Damages. The FCCPA, on the other hand, is under Title XXXIII-Regulation of Trade, Commerce, Investments, and Solicitations, Chapter 559-Regulation of Trade, Commerce, and Investments, Generally, and Part VI-Consumer Collection

---

[7] Net worth is found by subtracting Total Liablities (Row 21 of the Balance Sheet) from Total Assets (Row 12 of the Balance Sheet), which by virtue of a balance sheet should equal Total Equity Capital (Row 28 of the Balance Sheet).

Practices Act. The punitive damages cap is expressly intended to apply to actions in tort or contract—not the FCCPA.

### c. Statutory Damages

Each Plaintiff is seeking $1,000.00 in statutory damages. The factors in determining an amount of statutory damages are the nature of defendant's noncompliance with the FCCPA, the frequency and persistence of the noncompliance, and the extent to which the noncompliance was intentional. Plaintiffs' position is that all of these factors are well satisfied based on all of the considerations already stated in this section.

### IV. Injunctive Relief

This Court "may provide such equitable relief as it deems necessary or proper, including enjoining the defendant from further violations of this part." § 559.77(2). As stated in Paragraph 66, on page 20 of the Joint Pretrial Statement, "Since servicing of the loan has transferred to a different entity, Plaintiffs are interested in Defendant being ordered to take the necessary steps to properly inform the new servicer of the status of the loan, the need to offer Plaintiffs a reinstatement that is unconditional and without default related fees/costs, and to otherwise facilitate such a reinstatement. Defendant contends that this is not within the scope of the pleadings." Plaintiffs also state here that Defendant should be required to correct disparaging credit reporting.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs are seeking substantial emotional distress damages and punitive damages, maximum statutory damages, injunctive relief regarding Defendant facilitating correction of its errors now that servicing has transferred to another servicer who is carrying over default related fees and costs and threatening foreclosure, and reasonable attorney's fees and costs to be determined by the Court pursuant to the FDCPA and FCCPA.

        Respectfully submitted,

        **PARKER & DUFRESNE, P.A.**
           **/s/ Austin Brown**
        E. Warren Parker, Jr., Esq.
        Florida Bar No. 958506
        Austin Brown, Esq.
        Florida Bar No. 96633
        Parker & DuFresne, P.A.
        8777 San Jose Blvd., Ste. 301
        Jacksonville, Florida 32217
        Telephone: (904) 733-7766
        Facsimile: (904) 733-2919
        *service@jaxlawcenter.com*
        *abrown@jaxlawcenter.com*
        *parker@jaxlawcenter.com*
        Trial Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on February 4, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will transmit Notice of Electronic Filing to counsel of Record.

                /s/ Austin Brown
                  Attorney